IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCELLUS FRENCH, ) | |
| B03076, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 25-cv-1599-DWD |
| ) | |
| ANTHONY WILLS, ) | |
| SAMUEL STERRETT, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Marcellus French, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action for alleged deprivations of his constitutional rights under 42 U.S.C. § 1983 and RLUIPA. On October 15, 2024, the Court designated three claims sufficient to proceed beyond initial review concerning Plaintiff French's ability to observe his religion by attending regular Taleem and Jumu-ah services at the prison (Doc. 4). On June 10, 2025, Plaintiff French filed a motion for a preliminary injunction (Doc. 6) wherein he alleged that since the filing of this lawsuit, he has not been allowed to attend a single religious service. On August 4, 2025, Defendants responded. (Doc. 11).

## Background

The operative claims from the Amended Complaint are:

**Claim 1:** First Amendment claim related to the denial of Jumu'ah and/or Taleem services against Defendants Sterrett and

>                    **Wills in their individual capacities (or against Defendant Wills in his official capacity for any injunctive relief sought);**
>
> **Claim 2:**      **RLUIPA claim related to the denial of Jumu'ah and/or Taleem services against Defendant Wills in his official capacity;**
>
> **Claim 3:**      **Equal Protection claim related to the denial of Jumu'ah and/or Taleem services for inmates in the East cellhouse against Defendants Sterrett and Wills;**

In the motion for a preliminary injunction, Plaintiff stated that defendants have acted in concert to deny him access to any and all Al-Islam services (Taleem and Jumu'ah). (Doc. 6 at 1-2). Plaintiff claims he has filed multiple requests with Defendants Sterrett and Wills expressing his desire to participate in services, but his requests have been denied. He characterizes the denial as discriminatory and retaliatory. (Doc. 6 at 3). As preliminary relief, he seeks a court order that he be allowed to attend any and all Al-Islam services offered at Menard, especially those offered in his housing unit. (Doc. 6 at 3-4).

In response, the Defendants contend that he does not have a likelihood of success on his claims because understaffing and security concerns have legitimately impacted religious offerings and thus provide a compelling government interest that justifies their ability to limit access to services. (Doc. 11 at 7-8). They specifically contend via Defendant Sterrett's Declaration (Doc. 12-1) that once morning per week Taleem is offered, and the second Friday afternoon each month Jumu-ah is offered, but that the services can only accommodate 9 attendees, and may be cancelled due to understaffing and/or security

reasons. They further argue Plaintiff cannot demonstrate irreparable harm, and his request is against the public interest because accommodating it would be burdensome to the prison and would prioritize his religious needs over those of other inmates. Finally, they argue that based on sovereign immunity, Plaintiff does not have a claim that will succeed.

As the Court has noted in relation to a recent Motion to Show Cause (Doc. 8), Plaintiff cannot seek injunctive relief broader than the operative claims listed above in this order. (Doc. 9). Thus, to the extent Plaintiff seeks injunctive relief on a theory of retaliation, he cannot proceed. *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019). However, to the extent he seeks injunctive relief related purely to his ability to attend religious services, as limited by Wills and Sterrett, these contentions are aligned with his operative claims. Plaintiff also complains in the same affidavit of broader retaliation or problems with his access to the Courts, but again, these issues are broader than the claims in this lawsuit and cannot form a basis for injunctive relief here.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief. See *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—

in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "A movant's likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020). While Plaintiff is not required to "show that [he] definitely will win the case…a mere possibility of success is not enough," and he must make "[a] strong showing that [he] is likely to succeed on the merits." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). A strong showing typically entails a demonstration of how the applicant intends to prove key elements of his case. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020); *Doe v. University of Southern Indiana*, 43 F.4th 784, 791-92 (7th Cir. 2022) (the court is not required to make inferences in the movant's favor when considering preliminary injunctive relief).

The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Here, Plaintiff's case contains a RLUIPA claim and a First Amendment claim about his ability to attend regular Taleem and Jumu'ah services at the prison. The standards for both claims are similar, but RLUIPA generally affords an inmate broader religious liberties, so the Court centers the analysis of preliminary injunctive relief on the RLUIPA standards. "In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion." *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). If "the plaintiff establishes this prima facie case," the defendant must demonstrate that its "practice is the least restrictive means of furthering a compelling governmental interest" to defeat the plaintiff's claim. *Id.* "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,'" so long as the "prisoner's request for an accommodation [is] sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)). If the plaintiff establishes a prima facie case, then the defendant must demonstrate that its practice is the least restrictive means of

furthering a compelling governmental interest to defeat the plaintiff's claim. *Koger*, 523 F.3d at 796.

The parties do not contest that Plaintiff's ability to attend Taleem and Jumu'ah is a form of religious exercise for his religion, Al-Islam. However, they disagree about the issue of a substantial burden. Defendants argue that Plaintiff's lack of access to the regular services is not a substantial burden and is necessitated by prison security and understaffing issues. They indicate services are run regularly, but they have not provided any evidence of how often services are run for Plaintiff in the East cell house, how many Al-Islam observers reside in that house and vie for the coveted 9 slots to attend services once a week or once a month, or how recently Plaintiff has been afforded the chance to attend services. Their compelling interest rational is overly generic, and precedent cautions against relying on overly generic concerns. *See e.g.*, *Holt*, 574 U.S. at 357-58 (even if the burden results from a rule of general applicability, the government shall not substantially burden an inmate's religious exercise unless the resulting burden is the least restrictive means of furthering a compelling government interest); *Schlemm v. Wall*, 784 F.3d 362 (7th Cir. 2015) (discussing the thorough analysis that accompanies a RLUIPA claim when a religious hinderance is supported by generic reasoning). The Court needs more information about Plaintiff's personal ability to attend services before it can say Plaintiff does or does not have a reasonable likelihood of success on the merits of his claim. *Id.* at 363 ("RLUIPA requires us to scrutinize the asserted harm of granting specific exemptions to the particular religious claimants and to look to the marginal interest in enforcing the challenged government action in the particular context.").

Additionally, the Defendants argue that Plaintiff has not demonstrated irreparable harm, but the total inability to attend religious ceremonies appears sufficient at this early juncture to constitute harm. *See Felton v. Commissioner of Indiana Dept. of Corr.*, 2021 WL 1090256 at * 2 (S.D. Ind. Mar. 22, 2021) (finding that the suspension of all communal worship services substantially burdened an inmate's religious exercise under RLUIPA for purposes of a preliminary injunction); *Knowles v. Pfister*, 829 F.3d 516, 518 (7th Cir. 2016) (indicating that forbidding a religious observance important to a devout practitioner could not be thought harmless).

Based on the foregoing analysis, the Court finds it necessary to hold an evidentiary hearing to collect more individualized information about the restrictions on Plaintiff French's ability to attend Taleem or Jumu'ah ceremonies. However, the Court will further entertain Plaintiff's request only so far as it pertains to services held for his own cellhouse. The request to attend all Taleem and Jumu'ah services offered in any part of Menard is too broad and would understandably create security concerns and burden prison staff. Accordingly, the hearing will focus solely on Plaintiff's access to services in his current housing unit.

## DISPOSITION

A ruling on Plaintiff's Motion for a Preliminary Injunction (Doc. 6) is **DEFERRED**. This matter shall be set for an evidentiary hearing by separate order.

Defendants' Motion to Supplement (Doc. 12) is **GRANTED**, and Defendant Sterrett's Declaration (Doc. 12-1) and the prison religious schedule (Doc. 12-2) have been reviewed.

**IT IS SO ORDERED.**

Dated: August 18, 2025

                                                                             *s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge