IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCELLUS FRENCH, B03076, | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 25-cv-1599-DWD |
| ANTHONY WILLS, SAMUEL STERRETT, | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Marcellus French, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action for alleged deprivations of his constitutional rights under 42 U.S.C. § 1983 and RLUIPA. On October 15, 2024, the Court designated three claims sufficient to proceed beyond initial review concerning Plaintiff French's ability to observe his religion by attending regular Taleem and Jumu'ah services at the prison (Doc. 4). On June 10, 2025, Plaintiff French filed a motion for a preliminary injunction (Doc. 6) wherein he alleged that since the filing of this lawsuit, he has not been allowed to attend a single religious service. On August 4, 2025, Defendants responded. (Doc. 11). On September 4, 2025, the Court held an evidentiary hearing on the motion. For reasons explained in this Order, the Court finds it appropriate to grant interim injunctive relief until the issue can be addressed further.

## Background

The operative claims from the Amended Complaint are:

**Claim 1:** **First Amendment claim related to the denial of Jumu'ah and/or Taleem services against Defendants Sterrett and Wills in their individual capacities (or against Defendant Wills in his official capacity for any injunctive relief sought);**

**Claim 2:** **RLUIPA claim related to the denial of Jumu'ah and/or Taleem services against Defendant Wills in his official capacity;**

**Claim 3:** **Equal Protection claim related to the denial of Jumu'ah and/or Taleem services for inmates in the East cellhouse against Defendants Sterrett and Wills;**

In the motion for a preliminary injunction, Plaintiff stated that defendants have acted in concert to deny him access to any and all Al-Islam services (Taleem and Jumu'ah). (Doc. 6 at 1-2).

In response, the Defendants filed a brief, supported by a declaration from Chaplain Samuel Sterrett. (Docs. 11, 12). The Chaplain explained that Plaintiff is eligible to attend the All Faiths Chapel line on Tuesday mornings at 8:30a.m.. (Doc. 12-1 at ¶ 10). He further explained Taleem is offered once a week, and Jumu'ah is offered the second Friday of the month at 1:15p.m.. (Doc. 12-1 at ¶¶ 13-14). Due to staffing shortages, only 9 inmates are allowed to attend chapel per week, and those in attendance are to be rotated. (Doc. 12-1 at ¶¶ 19-20). Chapel lines may be cancelled due to availability of staff, time and space; the need to share space with all groups; institutional safety and security; and, conflicts with other scheduled activities. (Doc. 12-1 at 23-24).

The Court determined that the preliminary injunction could not be resolved on paper because restrictions on religious activity cannot be justified by overly generic security concerns.  (Doc. 13).  Thus, the matter was set for an evidentiary hearing.

### The September 4, 2025 hearing

At the hearing, Plaintiff testified that he has not been allowed to attend any services since October of 2024, and he believes he last attended a service in late 2023 or very early 2024.  On a few occasions during this timeframe, he has observed other individuals from his area of the East house being allowed to attend services.  He reports that 3-4 participants have attended, rather than the full 9 that Chaplain Sterrett indicated in his declaration would be allowed to attend. Plaintiff indicated that he has made repeated requests to his counselor, the Chaplain, and the Warden that he be allowed to attend the services, but he has still been denied.  Inmates do not have free will to line-up to attend services, and instead they must wait for an officer to come to their cell with a call pass to retrieve them.

It is important to Plaintiff to attend services, particularly Taleem, because Taleem is an educational gathering that is meant to be led by the individuals who possess the most knowledge of the faith.  Plaintiff has been allowed to lead Taleem on previous occasions.  By contrast, Jumu'ah is the weekly congregational gathering.  Both are important to Plaintiff's faith.  Plaintiff estimates there are about 41 individuals in the East cellhouse that follow Islam.

Plaintiff does not know why he has not been allowed to attend services.  He testified that during the timeframe he complained about, he was on A-grade, he was not

in segregation, and he was not aware of any disciplinary or security-based reasons that he would be prohibited from attending.

Although the Court indicated in the written order setting the preliminary injunction for a hearing that the Defendants would need to present more than a generic security-based reason for the restrictions on service attendance, the Defendants did not present any additional evidence or testimony at the hearing. Counsel attempted to contact Chaplain Sterrett during a short pause in the proceedings to see if he was available to testify, but this query was unsuccessful.

## Analysis

There is a burden-shifting framework for RLUIPA claims. Specifically, "[i]n establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion." *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). If "the plaintiff establishes this prima facie case," the defendant must demonstrate that its "practice is the least restrictive means of furthering a compelling governmental interest" to defeat the plaintiff's claim. *Id.* The burden of persuasion lies fully with the prison to establish a compelling justification for a restriction and to demonstrate it is the least restrictive means to accomplish a goal. *See Schlemm v. Wall*, 784 F.3d 362, 365 (7th Cir. 2015). Generic security concerns do not suffice. *Id.* (finding that concerns about food safety, or gang affiliations were not enough to justify restrictions on a religious diet or bandana because they were not linked to the inmate's personal situation and his requested accommodations); *Holt v. Hobbs*, 574 U.S. 352, 369 (2015) ("Courts must hold

prisons to their statutory burden, and the must not 'assume a plausible, less restrictive alternative would be ineffective.").

Given that Defendants did not present any evidence at the preliminary injunction hearing, the Court finds that at present, they have failed to meet their burden under RLUIPA to demonstrate that the service offerings and attendance limits are necessary to further a compelling interest and are the least restrictive means available to protect this interest. The Court is mindful that prison security is a delicate and complex issue, for which the prison has much greater expertise. Nevertheless, the Court must "hold prisons to their statutory burden" and it cannot simply accept the generic reasoning that understaffing and security are legitimate reasons to control Plaintiff's religious exercise. This is particularly so because Plaintiff testified that some of his neighbors within his cellhouse have been allowed to attend services, and the services have not been run at the full capacity of nine individuals.

The Court will set this matter for a future hearing to gather more evidence on the issues of the compelling interest and least restrictive means, but in the interim it will grant injunctive relief as follows:

- The prison shall arrange for Plaintiff to attend the weekly Tuesday morning Taleem Islamic service for his cellhouse, and he shall count as the 10th attendee such that he does not displace another inmate from the 9-available slots for weekly observance of his religion. The Court finds that as a temporary measure, expanding the religious gathering from 9 to 10 inmates will not overwhelm security.

- The prison shall also arrange for Plaintiff to attend the once-a-month Friday afternoon Jumu'ah gathering, which is to be held the second Friday of the month at 1:15p.m. for his portion of the East cellhouse. Again, Plaintiff shall be the tenth attendee and thus shall not displace others.

The prison shall maintain this schedule of religious practice for Plaintiff until another hearing can be held where the Court may consider additional evidence. The Court was left with no option other than to fashion this remedy *sua sponte* because the prison failed to provide adequate evidence about this issue in a timely manner. If Plaintiff's testimony is credited, he has been entirely prevented from attending congregational gathers for his religion for more than a year, and these gatherings are significant to his religious exercise. The Court sees no reason to allow this issue to linger indefinitely, particularly where the Defendants are aware of the exact issue and had ample time to fashion a response.

## DISPOSITION

A ruling on Plaintiff's Motion for a Preliminary Injunction (Doc. 6) is further **DEFERRED**. In the meantime, **IT IS HEREBY ORDERED THAT:**

- The prison shall arrange for Plaintiff to attend the weekly Tuesday morning Taleem Islamic service for his cellhouse, and he shall count as the 10th attendee such that he does not displace another inmate from the 9-available slots for weekly observance of his religion. The Court finds that as a temporary measure, expanding the religious gathering from 9 to 10 inmates will not overwhelm security.

- The prison shall also arrange for Plaintiff to attend the once-a-month Friday afternoon Jumu'ah gathering, which is to be held the second Friday of the month at 1:15p.m. for his portion of the East cellhouse.

>Again, Plaintiff shall be the tenth attendee and thus shall not displace others.

This matter shall be scheduled for an additional evidentiary hearing within the next 60 days. The hearing will be scheduled be separate order. The Defendants must present evidence at the hearing to address their burden as explained in this Order. If after the hearing Plaintiff wishes to present further evidence of his own, the Court will extend Plaintiff the same courtesy that is being extended here by deferring ruling and extending the matter to take further evidence.

The Clerk of Court shall transmit a copy of this Order to the Litigation Coordinator at Menard Correctional Center to be shared with Warden Anthony Wills for immediate implementation of the relief set forth.

**IT IS SO ORDERED.**

Dated: September 8, 2025

_____
DAVID W. DUGAN
United States District Judge