IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARCELLUS FRENCH, M21081,           )
                                    )
                    Plaintiff,      )
                                    )
vs.                                 )        Case No. 25-cv-1599-DWD
                                    )
ANTHONY WILLS,                      )
SAMUEL STERRETT,                    )
                                    )
                    Defendants.     )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Marcellus French, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Western Illinois Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). This case began as a multi-plaintiff action (Case No. 24-cv-1462-DWD), but on August 15, 2025, the Court severed each plaintiff into his own matter because only Mr. French sought emergency injunctive relief, and the exhaustion issues appeared to be different for each plaintiff. The Defendants filed a Motion for Summary Judgment (Doc. 18), and Plaintiff responded (Doc. 42). For reasons explained herein, Plaintiff may proceed on Claim 1, but he may not proceed on Claim 2 because he is no longer eligible for injunctive relief in light of his transfer, and he may not proceed on Claim 3 because he did not exhaust this claim prior to filing his signed complaint for this lawsuit.

## BACKGROUND

This multi-plaintiff action was initiated with the filing of a joint complaint on June 6, 2024.  (Case No. 24-cv-1462, Doc. 1).  The initial complaint was signed by Plaintiff French, but not by his co-plaintiffs, so each co-plaintiff was given time to express their willingness to proceed and to file signed complaints.  In short, the plaintiffs alleged that Defendants Wills and Sterrett had not allowed adequate access to religious services because the three had been unable to regularly attend Taleem or Jumu'ah services between September of 2023 and July of 2024.  One hinderance they identified was the fact that if Taleem was offered at the regularly scheduled time, that time coincided with their sole access to law library, meaning they would have been forced to choose between religion or law library time.  Additionally, they alleged that other general population cell houses at Menard received more favorable religious offerings than the East cell house where they resided.  They claimed that this differential treatment had no basis and violated their right to Equal Protection.

The Court allowed Plaintiffs to proceed on the following claims:

**Claim 1:** **First Amendment claim related to the denial of Jumu'ah and/or Taleem services against Defendants Sterrett and Wills in their individual capacities (or against Defendant Wills in his official capacity for any injunctive relief sought);**

**Claim 2:** **RLUIPA claim related to the denial of Jumu'ah and/or Taleem services against Defendant Wills in his official capacity;**

**Claim 3:** **Equal Protection claim related to the denial of Jumu'ah and/or Taleem services for inmates in the East cellhouse against Defendants Sterrett and Wills.**

(Doc. 4).

The parties undertook discovery on the exhaustion of administrative remedies, and in doing so they have identified a handful of grievances relevant to the claims in this case.  Defendants argue that Plaintiff failed to properly exhaust grievances concerning any of his claims.  By contrast, Plaintiff argues that he pursued the grievance process as far as he could, but due to unanswered grievances from the defendants his efforts were impeded.

### FINDINGS OF FACT

On September 12, 2023, French filed grievance K4-0923-0284 wherein he alleged:

> On 09.08.2023 I, Marcellus French along with Allen Ford was housed in East House cell #718 the cell has "no" cold water functioning.  Also, today 09.12.23 Islamic service (Taleem) was cancelled without reason other passes such as law library, mental health and visitation was not cancelled, so why was the Islamic service cancelled.

(Doc. 18-1 at 3).  As relief, French sought to participate in religious congregation, teachings, and prayer.  Though French submitted the grievance as an emergency, the Warden deemed it a non-emergency and it was forwarded to the counselor for a response.  The counselor's response indicates "religious service was cancelled due to a shortage of staff."  (*Id.*).  The grievance is stamped as received for second level grievance officer review on October 4, 2023.  The Defendants argue by declaration from Administrative Review Board (ARB) member Margaret Madole that grievance K4-0923-0284 was never appealed to the ARB.[1]  However, Plaintiff argues by reference to his

---

[1] Madole's declaration was filed in Plaintiff's original case, 24-cv-1462, on August 15, 2025.  (*French, et al. v. Wills, et al.,* Case No. 24-cv-1462, Doc. 88).  The declaration was filed the same day that the present case was

cumulative counseling summary (Doc. 42 at 13-17) that he never got a grievance officer response to grievance K4-0923-0284 from the prison, thus rendering the process unavailable.

Next, French submitted grievance K4-0124-0648 on January 26, 2024, wherein he alleged:

> On 01.23.2024 Menard tried to enforce that the Al-Islamic service for teaching and learning titled "Taleem service" will be conducted on the same day and time as law library (which is Tuesdays at 8:00) forcing individuals like myself to chose between the rights that individuals in custody are entitled to such as access to law library and access to religious services and meetings with clergy, to force a inmate to chose between two rights/entitlements is to deprive an inmate of one of his rights there are seven days in a week, most [movement] for inmates are handled during 7am-3pm.  The only scheduled [movement] where grievant is housed is Tuesday (law library and Taleem service) there is no [movement] Sunday, Monday, Wednesday or Saturday so why would administration schedule two inmate rights to be ran at the exact same time and date.  Clearly a deliberate indifference one should never have to chose between studying and preparing for his legal proceeding and practicing his faith/religion or attending religious services.

(Doc. 18-1 at 1-2).  As relief, Plaintiff asked that law library and Taleem be conducted at different times.  The Warden denied the grievance emergency status, and on February 2, 2024, the counselor responded.  (Doc. 18-1 at 1).  The counselor indicated:

> Menard CC is a maximum security facility where administration ranks safety and security of the highest priority.  At times scheduling conflicts can arise which may cause an IIC to make a decision which is more important. MCC does its best to try to avoid these situations.  IIC's are able to utilize the law library box in cell house to ask questions, order case law, request forms, efile, etc.

---

severed, and it appears the document inadvertently was not transferred to the docket sheet in this matter. The Clerk of Court shall **RETRIEVE** document 88 and shall attach it as an exhibit to the Defendants' Motion for Summary Judgment at document 18 in Case No. 25-cv-1599.

(Doc. 18-1 at 1).  The grievance bears no stamps indicating it was ever returned after the counselor's response.  Defendants contend by reference to Madole's declaration, that grievance K4-0124-0684 was never appealed to the ARB.  Plaintiff counters that he never got the grievance back from the counselor.  The cumulative counseling summary that French submitted demonstrates that a response was prepared to grievance K4-0124-0684 on February 2, 2024.  (Doc. 42 at 16).  The counseling summary does not reflect that the grievance was ever received for second level review by the grievance officer.

In addition to grievances K4-0923-0284 and K4-0124-0648, Plaintiff also argues in his response that he never got a response to grievance K4-0724-2917.  (Doc. 42 at 6).  The cumulative counseling summary reflects that grievance K4-0724-2917 was filed by French on June 26, 2024, concerning a number of topics, including the denial of religious services. (Doc. 42 at 14).  The counseling summary further indicates the grievance was deemed a non-emergency on July 8, 2024, and was forwarded to the medical department for a response the same day.  (*Id.*).

In addition to the aforementioned grievances, Plaintiff's grievance records also contain grievance K4-0424-1826, which he filed on April 11, 2024.  The grievance addressed a lack of Islamic services, among other things, that had occurred over the last 30 days due to a lockdown.  (Doc. 18-1 at 7-8).  As relief, Plaintiff sought "to be treated equally as every individual housed in general population."  (*Id.* at 7).  On June 6, 2024, the grievance officer indicated:

> Every day Menard Correctional Center is placed on a level 2 lockdown per the Warden as directed by the Deputy Director as a result of a staff shortage being experienced at the facility.  Out of cell services being provided vary

on a daily basis based on institutional needs.  East House has been on a level 1 lockdown for disciplinary reasons since 3/31/2024.   This is an Administrative Decision.  Contacted the East Cell House Sanitation Officer, they advised that cleaning and hygiene supplies are passed out on a weekly basis.  Upon review of Offender 360 call pass history, the individual was scheduled for multiple passes for law library and legal exchange.

(Doc. 18-1 at 5).  The Warden concurred with the denial of the grievance on June 27, 2024.

(*Id.*).  The ARB records indicate that the grievance was addressed on August 16, 2024.

(Doc. 18-1 at 11).

Finally, grievance K4-0324-1494 concerning access to appropriate food during Ramadan was submitted on March 19, 2024.  (Doc. 18-1 at 9).  Per Plaintiff's cumulative counseling summary, the grievance was deemed a non-emergency and got a counselor's response on March 25, 2024.  (Doc. 42 at 15).  On May 3, 2024, the grievance officer responded and forwarded the grievance to the warden for final review.  (Doc. 42 at 14). The ARB reviewed the grievance on July 10, 2024.  (Doc. 18-1 at 11).

In addition to the cumulative counseling summary, Plaintiff French also submitted a collection of 11 affidavits that he alleges he wrote and transmitted to the ARB in a further attempt to exhaust his administrative remedies.  (Doc. 42 at 20-31).  Five of the affidavits are from November of 2023 and complain of specific cancellations of services. (Doc. 42 at 24-28).  They mention grievance K4-0923-0284 not yet receiving a response. One March 19, 2024, affidavit discusses the fact that other cellhouses have differential religious treatment, but it does not mention specific grievances.  (Doc. 42 at 29).  Instead, in the March 19, 2024, affidavit French simply states he has notified the chaplain and administration about religious issues "in many ways."  (*Id.*).  Finally, an undated affidavit

complains about the denial of religious services from September 8, 2023, through December 26, 2023. (Doc. 42 at 21). Plaintiff alleges he has written Wills, clinical services, and a grievance officer about a batch of five grievances that have not received responses, including some concerning religion. (*Id.*). Plaintiff alleges that he sent these affidavits to the Administrative Review Board, and to support this assertion, he submitted postage receipts. The postage receipts that are legible demonstrate mailings in October and November of 2024, and February of 2025. (Doc. 42 at 33-37). One is completely illegible. (Doc. 42 at 34).

### CONCLUSIONS OF LAW

#### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to

exhaust.  *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[2]  After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust.  *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018).  The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal.  *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies.  42 U.S.C. § 1997e(a); *Pavey, 544 F.3d at 740*.  "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).  For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies."  *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code.  20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Section 504.810(c) requires that a grievance state: "what happened, when, where and the

---

[2]  The Supreme Court's recent opinion in *Perttu v. Richards*, 605 U.S. 460 (2025), held that if the facts necessary for a ruling on exhaustion are intertwined with the merits of the claim, a jury trial is required. But the *Perttu* Court did not go so far as to extend the Seventh Amendment right to a jury trial to all exhaustion disputes.  In this case, there is no intertwinement of the facts, so *Perttu* does not require that this issue be determined at a jury trial.

name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f). Section 504.870(a) provides that offenders can submit grievances directly to the ARB concerning protective custody placement, disciplinary proceedings at a facility other than the facility where the offender is currently assigned, and all other issues about a facility other than the offender's current facility (except for personal property and medical issues).

## B. Analysis

The Defendants argue that the grievance process was available to Plaintiff, and that he did not fully exhaust any grievances concerning religion prior to filing this suit

on June 6, 2024.  Specifically, they argue that grievances K4-0923-0284 and K4-0124-0648 were never appealed to the ARB, so they are not exhausted.  Additionally, they argue that grievances K4-0324-1494 and K4-0424-1826 were both appealed but the ARB did not rule on them until July 10, 2024, or August 16, 2024, meaning both were exhausted at all levels of review after the initiation of this lawsuit.

Plaintiff states that while the grievance process was available, he had a number of relevant grievances that were not properly processed at the facility, and thus, his efforts should be accepted as exhaustion.  Specifically, he contends that he never received facility responses concerning grievances K4-0923-0284 and K4-0124-0648 from the prison, thus depriving him of the ability to appeal to the highest level of review.  In support of this proposition, he submitted his cumulative counseling summary.  The counseling notes show that grievance K4-0923-0284 was received by the prison for second level review by the grievance officer, but unlike many other grievances discussed in the log there is no further indication that the grievance officer ever actually processed and responded to this grievance.  Grievance K4-0923-0284 concerns the cancellation of Taleem services without reason.  (Doc. 18-1 at 3).  The counselor indicated that the service was cancelled due to a staff shortage.  (*Id.*).  As relief, Plaintiff sought the ability to attend religious congregational gatherings.  (*Id.*).  Though the Defendants argue that the ARB never received an appeal of this grievance, they have not provided any evidence from prison officials showing that the prison ever addressed this grievance at all levels of review, and the burden to establish this was with them.

The Court must also consider if grievance K4-0923-0284 is sufficient to exhaust all three of Plaintiff's claims, an issue the Defendants did not address at all. Plaintiff has First Amendment and RLUIPA claims concerning the cancellation of services (Claims 1 and 2), and he also has an equal protection claim alleging that other inmates of different religions or in different cellhouses were treated more favorably. While grievance K4-0923-0284 is sufficient to put the prison on notice of potential First Amendment or RLUIPA issues tied to the cancellation of services,[3] the grievance makes no mention of an Equal Protection issue.

Likewise, grievance K4-0124-0648 also complains about the way religious services were being offered, with the specific contention that Islamic services should not be offered at the same time as law library. Plaintiff has less specific evidence about what happened with this grievance than he does about grievance K4-0923-0284, because unlike that grievance which the counseling summary noted as received by the grievance officer and never returned, the only thing the counseling summary says about grievance K4-0124-0648 is that it got a counselor's response. Regardless of what happened to grievance K4-0124-0648, it makes no mention of an Equal Protection problem, so it is not sufficient to exhaust Claim 3.

---

[3] Though grievance K4-0923-0284 does not name Defendants Sterrett or Wills, as the chaplain and warden, the Court finds it reasonable to assume the grievance was sufficient to inform these two of religious access problems. *See e.g., Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (finding that a grievance about the cancellation of religious services exhausted claims against the warden and chaplain even though they were not explicitly named because the cancellation of services was an administrative decision and it belies reason to think prison administrators were not aware of who participated in the decision to cancel services).

Grievance K4-0424-1826 clearly complains of unequal treatment for different religions, but the Defendants are correct to argue that this grievance was not fully exhausted with the ARB until August 16, 2024, months after Plaintiff filed his signed complaint. *See e.g.*, *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (a premature lawsuit, filed before an inmate completes the grievance process, must be dismissed without prejudice). Given that Plaintiff filed this suit before receiving a response on grievance K4-0424-1826, he violated the prohibition on suing before exhausting. As such, grievance K4-0424-1826 does not demonstrate exhaustion of Claim 3 in a timely fashion prior to the filing of this suit.

Plaintiff specifically complains in his response to summary judgment that he also never received responses from all the levels of prison review for grievance K4-0724-2917. He did not include a copy of this grievance, but the counseling summary indicates that it concerns a variety of issues, including the denial of religious services. The full contents of the grievance do not matter for the exhaustion analysis of Claim 3 because this grievance was not filed until June 26, 2024, a few weeks after Plaintiff filed his signed complaint in this case.

Aside from these specific grievances, Plaintiff generally argues that the grievance process at Menard was unreliable, and that given he is an experienced litigator, he never would have filed a lawsuit without first exhausting his claims. At the summary judgment phase, the generic assertion that the process was unreliable, and some grievance might have been lost is insufficient to create a genuine dispute of fact. Plaintiff also argues that for a significant portion of the relevant time, he was cellmates with Allen Ford (a former

co-plaintiff in this suit) and he and Ford took all the same steps for exhaustion.  To bolster his assertions that he filed many grievances that went missing, Plaintiff tendered 11 affidavits that he alleges he sent to the ARB, in a further attempt to exhaust his remedies. Only one affidavit stands out for the analysis of Claim 3.  A March 19, 2024, affidavit describes unequal treatment of different religions, but unlike some of the other affidavits, Plaintiff does not explicitly state in this affidavit that he had filed a grievance on the subject that went missing.  (Doc. 42 at 29).  The mere fact that Plaintiff sent an affidavit to the ARB about the same subject matter as potential grievances is not enough for exhaustion because informal letters do not satisfy the exhaustion requirement.  *See e.g., Williams v. Baldwin*, 239 F.Supp.3d 1084 (N.D. Ill. Mar. 6, 2017) (finding that an inmate's informal letters and communications were not a substitute for proper use of the grievance process).  Furthermore, even if the affidavits were prepared around the time they were signed and if they discussed missing grievances in detail, Plaintiff's proof that he transmitted them to the ARB consists of postage slips all bearing dates *after* the filing of Plaintiff's signed complaint.  Documents submitted to the ARB *after* the filing of the suit do nothing to demonstrate proper exhaustion before the suit was filed.

In sum, the Court is not persuaded that Plaintiff has created a genuine dispute about exhaustion concerning Claim 3.  It appears most likely that Plaintiff did legitimately raise the Equal Protection issue in grievance K4-0424-1826, but that he simply sued too early before getting a response to the grievance.[4]

---

[4] Plaintiff French argues in his response to summary judgment that he should be allowed to call Allen Ford as a witness concerning their grievance efforts, but the Court does not find that Ford's testimony would be helpful concerning Plaintiff French's exhaustion of his equal protection claim.  Last week the Court issued

One final issue must be discussed.  Although the Court finds that Plaintiff did all he could to exhaust Claims 1 and 2, Claim 2 is premised on RLUIPA and the only available form of relief for RLUIPA against a prison official is injunctive relief.  *See e.g., Maddox*, 655 F.3d at 717 (finding that a RLUIPA claim could only be brought against a prison official in their official capacity, and could not secure monetary relief in that capacity, so a prison transfer mooted a RLUIPA claim).  Plaintiff initiated this lawsuit at Menard, but he has since been transferred to Western.  The Defendants in this case are both Menard officials.  Thus, Plaintiff's transfer has eliminated his ability to seek injunctive relief under RLUIPA and Claim 2 must be dismissed.  *See, Maddox*, 655 F.3d at 717 (finding that a RLUIPA claim failed where Plaintiff had been transferred from Lawrence Correctional Center to Danville Correctional Center).

### DISPOSITION

The Clerk of Court is **DIRECTED** to retrieve Document 88 from Case No. 24-cv-1462, and the Clerk **SHALL** attach Document 88 as an exhibit to the Defendants' Motion for Summary Judgment at document 18 in this case (Case No. 25-cv-1599), for reasons explained in footnote 1.

Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED** in part and **DENIED** in part.  The Motion is granted as to Claim 3, and the Court finds Plaintiff failed

---

an Order on the exhaustion issues in Ford's case and found that his grievance pertaining to equal protection was likely lost, or at least that Defendants did not provide satisfactory evidence to demonstrate it was not properly exhausted.  *See Ford v. Wills, et al.*, Case No. 25-cv-1600 (Mar. 19, 2026, Order, Doc. 17).  French's grievance concerning equal protection clearly was not lost and simply was not exhausted prior to his filing of the signed complaint on June 6, 2024.  Given that Ford and French have distinct facts surrounding their exhaustion of Claim 3 on equal protection, Ford's testimony would not change the outcome for Claim 3 in this case.

to exhaust his remedies concerning Claim 3. Claim 3 is dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies prior to filing this suit. Judgment shall be entered to reflect the dismissal of Claim 3 without prejudice at the close of this case.

By contrast, the Motion is denied as to Claims 1 and 2, because the Defendants have failed to carry their burden of establishing that Plaintiff failed to exhaust his remedies on these claims. Despite this finding, Plaintiff may not proceed on Claim 2 under RLUIPA because his transfer to another prison has eliminated his possibility of injunctive relief from Defendant Wills in his official capacity. Claim 2 shall be dismissed with prejudice because Plaintiff is no longer eligible for relief under Claim 2, and judgment shall be entered on Claim 2 at the close of this case. Therefore, Plaintiff may only proceed on Claim 1 under the First Amendment against Defendants Wills and Sterrett.

The pending Motion for Sanctions (Doc. 29) and Motion to Amend (Doc. 33) will be addressed by separate order, and a merits scheduling order shall follow.

**IT IS SO ORDERED.**

Dated: March 24, 2026

/s/ *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge