IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARCELLUS FRENCH, M21081,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **ANTHONY WILLS,** <br> **SAMUEL STERRETT,** <br><br> **Defendants.** | ) | **Case No. 25-cv-1599-DWD** |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Marcellus French, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Western Illinois Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). This case began as a multi-plaintiff action (Case No. 24-cv-1462-DWD), but on August 15, 2025, the Court severed each plaintiff into his own matter because only Mr. French sought emergency injunctive relief, and the exhaustion issues appeared to be different for each plaintiff. Following summary judgment on the issue of exhaustion, Plaintiff was allowed to proceed on a single First Amendment claim against Defendants Wills and Sterrett. (Doc. 43). Now before the Court are several motions concerning the earlier proceedings on preliminary injunctive relief (Docs. 29, 45), and Plaintiff's Motion for Leave to Amend (Docs. 33, 44). For reasons explained here, the motions for sanctions and for leave to amend will be denied.

## BACKGROUND

This multi-plaintiff action was initiated with the filing of a joint complaint on June 6, 2024. (Case No. 24-cv-1462, Doc. 1). In short, the plaintiffs alleged that defendants Wills and Sterrett had not allowed adequate access to religious services because the three had been unable to regularly attend Taleem or Jumu'ah services between September of 2023 and July of 2024. One hinderance they identified was the fact that if Taleem was offered at the regularly scheduled time, that time coincided with their sole access to law library, meaning they would have been forced to choose between religion or law library time. Additionally, they alleged that other general population cell houses at Menard received more favorable religious offerings than the East cell house where they resided. They claimed that this differential treatment had no basis and violated their right to Equal Protection. Following summary judgment on exhaustion, the sole remaining claim is:

**Claim 1:** **First Amendment claim related to the denial of Jumu'ah and/or Taleem services against Defendants Sterrett and Wills in their individual capacities (or against Defendant Wills in his official capacity for any injunctive relief sought);**

(Docs. 4, 43).

Early in this case, the Court also addressed Plaintiff French's demand for preliminary injunctive relief concerning his ability to attend Jumu'ah and Taleem services. (Doc. 6). The Court held an initial evidentiary hearing on September 4, 2025, and granted interim preliminary injunctive relief because the Defendants' were not adequately prepared to present evidence on the issues central the preliminary injunction. (Doc. 21). Specifically, the Court had indicated to Defendants in an order setting the

matter for a hearing that they would need to present evidence about more than a generic security concern to justify limiting access to religious services, but Defendants had no such evidence at the hearing. (*Id*. at 3-4). Thus, the Court ordered that until another hearing could be convened, Plaintiff was to be taken to weekly Taleem services for his cellhouse, and he was to be taken to the once a month Jumu'ah service. (*Id.* at 5-6).

A second hearing on the preliminary injunction was held on November 18, 2025. At the second hearing, Defendant Sterrett testified about religious services at Menard, and Plaintiff's history of being enrolled in the religious offerings. The Court concluded that despite Sterrett's testimony, Defendants had still failed to carry their burden of establishing that their controls on religious offerings were the least restrictive means of accomplishing a compelling government interest. The Court also commented in the written ruling following the November 18th hearing that it was dismayed to learn Warden Wills had not implemented the interim injunctive relief, and Plaintiff had not attended religious services between the September and November hearings. (Doc. 28 at 14-15). The Court extended the preliminary injunctive relief requiring that Plaintiff be allowed to attend Taleem services weekly, and Jumu'ah services once a month. (*Id.* at 14-15).

**MOTION FOR SANCTIONS**

On December 8, 2025, Plaintiff filed a Motion for Sanctions (Doc. 29) seeking monetary compensation from Defendants Sterrett and Wills for the Taleem and Jumu'ah gatherings that he missed. In the motion, Plaintiff specifically sought to recover for twelve Taleem services missed between the Court's September Order granting interim relief and the filing of the motion, and three Jumu'ah services during the same timeframe.

Plaintiff argues that sanctions are warranted because other religions have been afforded services during the same timeframe, and defendants should not be allowed to flagrantly disregard the Court's orders directing that he be allowed to attend religious services.

In response, the Defendants contend that Plaintiff is not entitled to sanctions for at least two reasons. (Doc. 36). First, they argue that Plaintiff's motion was dated November 28, 2025, and it was filed with the Court on December 8, 2025—meaning that Plaintiff did not afford the 21 days provided under Federal Rule of Civil Procedure 11(c)(2) for a party to correct an issue before sanctions are awarded. Second, they argue that by the time of the November 18, 2025, hearing Plaintiff had been moved from the East cellhouse to the North Lowers cellhouse based on his prison employment, and despite Plaintiff not completing the appropriate paperwork to transfer his religious call lines from one cellhouse to another the prison automatically transferred him in light of the Court's previously ordered injunctive relief. With the transition from East cellhouse to North lowers, they explain that services available were on Thursday for Taleem and the fourth Friday of the month for Jumu'ah. They contend that following the Court's second evidentiary hearing, Plaintiff was consistently placed on the chapel call lines. A few were not run for state holidays, but there were others Plaintiff willfully missed to attend work. The defendants submitted supporting evidence of the call lines. (Doc. 36-2). As such, they contend monetary sanctions are not appropriate.

In reply, Plaintiff argues that he did not intentionally conceal his move from the East cellhouse to the North Lowers. (Doc. 39). He argues that the move was involuntary, and that he was reassigned involuntarily to a new prison job that conflicts with most

religious offerings. He further contends that he was worried if he did not comply with prison directives that he would be disciplined, so he attended his job when he was scheduled to attend. Furthermore, he argues that this means that as of December 29, 2025, he had not attended a single service. He also argues that his request for sanctions should not be precluded by the 21-day requirement of Rule 11(c)(2), because the defendants first knew they needed to provide services in September of 2025 and disregarded that order, and even after November 18 all the way through the end of December of 2025, he had not attended services.

"A district court has inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W.&S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (internal quotation marks omitted). A prerequisite to assessing sanctions under the Court's inherent authority is that the Court first make a finding of bad faith, as opposed to clumsy lawyering. *Fuery v. City of Chicago*, 900 F.3d 450, 463-64 (7th Cir. 2018). "'Bad faith' or 'vexatious' conduct, in both the inherent power and § 1927 contexts, does not require subjective bad intent; certain types of reckless conduct can suffice." *Cavelle v. Chicago Transit Auth.*, 2020 WL 133277, at *4 (N.D. Ill. Jan. 13, 2020). Even where an attorney alone engages in bad faith, but the client does not, sanctions may still be appropriate. *Fuery*, 900 F.3d at 467. Calibrating a sanction to bad faith conduct requires 'rough justice' and not accountant-like precision. *Id.* at 469.

Here, the parties argue about sanctions under Federal Rule 11, which is primarily tailored to misconduct associated with written pleadings. If the Court were only to consider sanctions under Rule 11, it is true on the documents available that Plaintiff did

not afford Defendants the 21-day period for safe harbor because his motion is dated November 28, and was filed with the Court just ten days later on December 8, 2025. However, the more appropriate authority for the sanctions at issue is likely the Court's inherent authority to grant a sanction because that authority lends itself more naturally to the problem at hand—alleged non-compliance with the Court's order on interim injunctive relief.

In order to award sanctions under the Court's inherent authority, the Court would need to first find that the Defendants engaged in bad faith. The sanction can be tailored to the conduct of the defendant and the defendant's counsel, or solely to one or the other. Though the hearings on the preliminary injunctive relief occurred 11 months ago and 9 months ago, the Court clearly recalls the difficulty at the hearings procuring the information necessary to rule on Plaintiff's request for preliminary injunctive relief. Specifically, at the first hearing defense counsel failed to come prepared with a witness and was unable to secure one after a recess. Though this was poor conduct in light of the Court's earlier written order specifying the sort of evidence that may be needed, the Court is not persuaded that it was true bad faith on behalf of the lawyer or the defendants. Even if it was bad faith, the initial sanction of sorts was the award of interim injunctive relief.

The Court was dismayed to learn at the second hearing that the interim injunctive relief was never carried out beyond Defendant Sterrett adding Plaintiff to the chapel call line so that if chapel lines were run, Plaintiff would have been invited. Though the Court was displeased to learn Plaintiff had not attended services from September to the

November hearing in 2025, Sterrett's testimony at the hearing did not create the impression that he personally or in bad faith failed to follow the Court's order. Furthermore, the Court never received adequate information from the parties about Defendant Wills' personal knowledge of the order for interim injunctive relief, so it would be difficult to look back and infer bad faith by Wills.

This leaves the question of if defendants' counsel engaged in bad faith. It is beyond question that counsel could have been better prepared for the hearings and could have likely worked more closely with her clients to ensure compliance with the interim injunctive order, but clumsy lawyering is not a basis for sanctions. *See Fuery*, 900 F.3d at 464 ("Mere clumsy lawyering is not enough" for a court to find bad faith). Defendants' counsel did not do a good job of assisting the Court in learning the pertinent facts to rule on the request for injunctive relief, but the conduct was not so poor that the Court is persuaded it amounted to willful bad faith.

One thing that weighs on this decision is the fact that neither counsel, Sterrett, nor Plaintiff notified the Court at the November 18, 2025, evidentiary hearing that by that time Plaintiff had already been relocated from the East cellhouse to the North Lowers, and thus was subject to a different schedule of religious offerings than the one the Court followed to fashion interim injunctive relief. Plaintiff claims his failure to mention it was an innocent mistake, but the Court is not persuaded on this account. While Plaintiff's omission of this information may not have been an intentional act to mislead the Court, it certainly did not help the Court in considering all relevant factors. The Court also learned at the second preliminary injunction hearing that while living in the East

cellhouse, Plaintiff had allegedly not submitted a proper call slip to be placed on the call lines for Taleem and Jumu'ah, but that once the interim preliminary injunction was issued Defendant Sterrett went ahead and placed Plaintiff on the call line, which is not standard practice. Additionally, in response to the motion for sanctions, counsel attested another automatic change of this sort was made on Plaintiff's behalf when he was moved from East cellhouse to North Lowers.

The point of discussing these discrepancies is that it seems at this juncture that both sides have contributed to the Court's difficulty gathering evidence in this case, and they have both potentially contributed to the fact that Plaintiff is not attending services. Plaintiff insists in his reply that he is now not attending services because of his job, but he does not indicate he has informed any prison official of the actual conflict, and instead just presumes they intentionally moved him to cause trouble. Although it does not seem like it should be that hard for Plaintiff and the prison to work out a schedule for him to attend services, at this juncture, the Court has done as much as it can. This is particularly so where Plaintiff has since been transferred from Menard to Western Correctional Center. The move moots the order for injunctive relief, and significantly diminishes the concern that Plaintiff was moved from one cellhouse to another to impede his access to services. Thus, based on the foregoing analysis, the Court does not find sufficient evidence of bad faith to warrant sanctions against Defendants Sterrett or Wills, or their attorney Linda King.

**MOTION TO AMEND**

Plaintiff has moved for leave to amend and he has filed a proposed amended complaint. (Doc. 33). The Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). Plaintiff seeks to add claims against Defendant Wills concerning his conditions of confinement, retaliation, and his access to the law library and the courts. The Court will deny the motion for leave to amend because the claims are inadequately pled and it appears they may also run afoul of the provisions on joinder.

In the amended complaint, Plaintiff alleges that for 30 days he was detained in a cell that had no running water, which meant he was forced to use toilet water to prepare for his religious activities. (Doc. 33-1 at 2-3). Plaintiff alleges he filed an emergency grievance about the issue, but Defendant Wills denied it emergency status, proving he knew Plaintiff was without purified water for at least 7 days. (*Id.* at 4-5). Plaintiff alleges the lack of clean water was also an Equal Protection violation because other inmates in his cellhouse had water. (*Id.* at 6-7). At the end of the section on water, Plaintiff alleges he actually went 60 days without clean water. Plaintiff seeks monetary damages.

Next, Plaintiff alleges that ever since filing this lawsuit, he has been subject to retaliation in many ways, including disciplinary segregation, and the denial of law library access. (*Id.* at 8). Plaintiff alleges that he has numerous ongoing cases, both civil and habeas in connection with his criminal conviction. He claims that despite defendants being aware of his deadlines and having policies that should have afforded ongoing law library access, he has not been able to attend law library for over 100 weeks, and he has gone 60 of those weeks without adequate legal assistance. (Doc. 33-1 at 13). Yet at another point in the pleading, Plaintiff indicates he attended one of the last nine law library sessions. (Doc. 33-1 at 19). Plaintiff argues that this has hindered his ability to timely demonstrate his actual innocence, among other things. Plaintiff argues this is retaliatory because it is an ongoing chronology of harmful events. Plaintiff alleges he has grieved this issue, with some grievances being deemed non-emergency, and others not getting any response from Defendant Wills. Plaintiff further faults Wills for directly and personally forcing him to file frivolous content in his lawsuits by depriving him the ability to conduct adequate legal research or to secure legal assistance. Plaintiff argues that Wills is so committed to retaliating and hurting him that Wills went as far as ignoring a court order. Plaintiff also alleges Wills and his subordinates have interfered with his access to timely incoming and outgoing mail.

As relief Plaintiff seeks his release from custody, and reversal of his criminal conviction. (Doc. 33-1 at 36). He also seeks a reverse and remand of state habeas proceedings where he has lost, and appointed counsel to assist him in further pursuing those proceedings. Additionally, he seeks monetary compensation. (*Id.* at 37). Though

Plaintiff alleges throughout the amended complaint that he has included a variety of evidence to bolster his claims, no evidence was attached. The proposed pleading consisted purely of Plaintiff's amended claims, and a full copy of his original complaint. The sole exhibit is a letter from the Blackstone Career Institute informing Plaintiff that he did not pass a final exam for a paralegal certification. (Doc. 33-1 at 71).

Upon initial review of the original complaint in this case, the Court designated three claims to proceed. (Doc. 4). Two of those claims, Claims 2 and 3, have since been dismissed from this case at summary judgment for failure to exhaust administrative remedies. For purposes of this review, the Court will accept Plaintiff's designation of two additional claims, and it will designate them as Claims 4 and 5:

**Claim 4:** **Eighth Amendment conditions of confinement claim against Defendant Wills concerning access to clean water;**

**Claim 5:** **First Amendment retaliation or access to courts claim.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

As an initial matter, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Multiple defendants may not be joined in a single action unless

the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence, or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Federal Rule of Civil Procedure 18 provides that a party may assert as many claims as they have against a single party. Alternatively, a plaintiff may join multiple claims against defendants if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, or if there is a question of law or fact that will be common to all defendants. Fed. R. Civ. P. 20. To remedy problems with misjoinder, a court may add or drop a party, or it may sever claims from a lawsuit. Fed. R. Civ. P. 21. The Seventh Circuit has cautioned that courts should guard against "scattershot" pleading strategies, and that they should "target for dismissal 'omnibus' complaints—often brought by repeat players—that raise claims about unrelated conduct against unrelated defendants." *Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018). The Seventh Circuit has even instructed that complaints wrought with joinder problems may be immediately stricken. *See e.g.*, *Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022) (when faced with misjoined claims, a court may strike a pleading and give leave to amend).

In the amended complaint, Plaintiff only discusses actions of Defendant Wills and makes no mention of Defendant Sterrett. Multiple defendants are not to be joined in a single action unless the claims against the defendants relate to a common set of facts or require common legal determinations. Here, the newly added claims do not relate to the original facts and introduce new legal theories under the Eighth Amendment and First Amendment. If Wills were the only defendant in the suit, these claims may be properly

joined, but with Sterett still in the case this joinder is disfavored. The original complaint dealt exclusively with religious exercise at Menard, but the new claims introduce Eighth Amendment conditions concerns that may only tangentially be tied to religion and they also involve an extended theory of retaliation and hinderance of Plaintiff's access to the courts. The introduction of new topics, particularly the access to the courts claim, weighs against allowing Plaintiff to proceed in this single suit. However, before severing claims, the Court will consider if the allegations are even sufficient to proceed.

On the conditions of confinement claim, Plaintiff alleges he was without clean drinking water for a period somewhere between 7-60 days. He alleges he informed Wills via an emergency grievance but Wills simply denied the grievance emergency status. Plaintiff stresses the water issue was a problem because he wanted pure water for religious ceremonies and consumption, but he does not say enough to support a religious exercise or conditions claim. To sustain a conditions of confinement claim on the lack of water, more detail would be needed about if Plaintiff had other sources of liquid throughout the day and if he suffered any ill-effects related to the lack of water. It would also be important to know how long the water issue really lasted, because the duration of a problem is significant for a conditions analysis. And to the extent that Plaintiff complains about the need of water for his religion, he has neither alleged that he was substantially burdened, nor that he was completely unable to observe his religion due to this issue. To the contrary, his allegations suggest that although he was not happy with the option of using water he did not consider pure, he still proceeded to do so in order to

observe his religion. As such, without more information, neither aspect of the water claim is sufficiently pled to proceed.

Turning to the retaliation and access to courts claim, Plaintiff alleges that from January of 2024 through the filing of this lawsuit, Wills has retaliated against him in multiple ways, including frustrating his access to law library and the courts. A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). To demonstrate an injury for retaliation purposes, an individual must establish "a showing of 'an objectively reasonable chilling effect' generally and that the plaintiff personally 'self-censors [his speech] as a result.'" *Henson v. Neal*, 2026 WL 92175 (7th Cir. Jan. 13, 2026).

Plaintiff's assertions that Wills has personally chosen to retaliate are threadbare and speculative. The filing of lawsuits or grievances can be protected speech, but Plaintiff has not adequately suggested beyond speculation and conjecture that Wills acted to harm him with the intention of deterring further protected activity. Furthermore, Plaintiff has not alleged that Wills' conduct has actually had a deterrent effect on him.

To the extent that Plaintiff independently seeks to pursue an access to courts or law library claim, this claim is wholly unrelated to the sole claim remaining in this case about Plaintiff's religious exercise. Prisoners have a fundamental right of meaningful

access to the courts, and this right extends to pretrial detainees. *Bounds v. Smith*, 430 U.S. 817 (1977); *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). When analyzing claims for the denial of court access, the court uses a two-part test. *Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992). First, the plaintiff must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins*, 977 F.2d at 268 (*quoting Bounds*, 430 U.S. at 828). Second, the plaintiff must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *Jenkins,* 977 F.2d at 268.

Here, Plaintiff faults Wills for preventing him from access to the Courts, but his sole connection between Wills and this issue is the allegation that he has submitted several grievances about law library access or legal assistance. Inmates do not have a right to a grievance process, *see Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008), and the mere mishandling of grievances does not give rise to a claim, *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of grievances by someone who did not participate in the underlying conduct is not sufficient to state a claim). Wills' mere role in processing a grievance alone, particularly the simple act of deeming it a non-emergency, is not sufficient to establish that he is personally responsible for Plaintiff's alleged legal woes. Thus, Plaintiff's allegations against Wills concerning access to the courts do not demonstrate adequate personal involvement.

Even if Plaintiff had alleged adequate personal involvement, the majority of the relief he seeks in association with this claim is not the sort that can be afforded in a § 1983 action. Specifically, Plaintiff seeks immediate release, or a reopening of state court habeas matters and the appointment of counsel. These are not forms of relief that can be granted in this action because a § 1983 action cannot be used to challenge the actual fact or duration of an inmate's confinement. *Wilkinson v. Dotson*, 544 U.S. 74, 77 (2005) ("a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration' of his confinement.").

Thus, the Court concludes that Plaintiff has not pled a valid claim for relief in his amended complaint, and even if he had, joinder of the additional claims with the existing First Amendment claim against Wills and Sterrett is inappropriate. Plaintiff's Motion for Leave to Amend is denied without prejudice. If Plaintiff wishes to re-plead any of these claims he should consider initiating a new lawsuit for those that are not properly joined with this action.

## Motion to Enforce Judgment

Plaintiff has filed a Motion to Enforce Judgment (Doc. 45) explaining that in January of 2026 he was transferred from Menard to Western Correctional Center. He claims that his religious opportunities at Western have been even worse than at Menard, and that despite showing officials orders from this case, they have refused to accommodate him for weekly religious services and a portion of Ramadan. Plaintiff argues that he should not be forced to pay another filing fee and initiate another lawsuit where he has not yet received relief in the present suit. Finally, he contends that if the

Court will not extend the injunctive relief to this new facility, he will amend his complaint to add new claims and parties. Defendants' oppose the motion on the premise that Plaintiff's transfer mooted injunctive relief. (Doc. 46).

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019). Additionally, an inmate's transfer from one prison to another moots claims for injunctive relief against the first prison unless the inmate alleges and demonstrates a likelihood of being retransferred to the first prison. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

Here, Plaintiff's transfer and the fact that he now seeks injunctive relief against different parties make his request untenable. The transfer moots his request, and even if the transfer did not fully moot his request he cannot now seek injunctive relief from officials who are not parties to this lawsuit. The automatic extension of relief in this context is particularly untenable where Plaintiff is at a new prison that may have new

rules or practices about religious observance, new security and administrative concerns, and new people responsible for processing inmate's requests to access religious services. Given the lack of information that the Court has about the new setting, it cannot craft an appropriate narrowly tailored remedy.

## DISPOSITION

Plaintiff's Motion for Sanctions (Doc. 29) and his Motion to Enforce (Doc. 45) are **DENIED**. Plaintiff's Motion for Leave to Amend (Doc. 33) is **DENIED** without prejudice for failure to state a claim and because joinder of these claims would not be appropriate in this action. Plaintiff's Motion for Status (Doc. 44) on his previous motions is **GRANTED** by the issuance of this Order.

**IT IS SO ORDERED.**

Dated: September 1, 2026

DAVID W. DUGAN
United States District Judge